IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

---

SAADIQ LONG,

*Appellant,*

v.

MERRICK
GARLAND, ET AL.,

*Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Virginia

---

## BRIEF OF APPELLANTS

---

Lena F. Masri
Gadeir I. Abbas*
Justin Sadowsky
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420

*Counsel for Appellant*

*\*Gadeir I. Abbas licensed to practice
in Virginia only. Practice limited to
federal matters.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................ii

TABLE OF AUTHORITIES ...........................................................................iv

INTRODUCTION ...........................................................................................1

JURISDICTIONAL STATEMENT ...............................................................3

ISSUES PRESENTED ....................................................................................4

STATEMENT OF THE CASE ........................................................................4

    A.   The TSC creates a federal terrorism watchlist without Congressional authorization. ............................................................4

    B.   Long is on the No Fly List, with horrible consequences. ..........7

    C.   Long is removed from the No Fly List while this case was previously on appeal, and the Fourth Circuit ruled that his as-applied No Fly List claims are moot. ...................................................9

    D.   Long continues to suffer consequences from watchlist placement. .......................................................................................11

    E.   The District Court dismisses Long's watchlist claims. ...........12

    F.   The Supreme Court abrogates Long. .......................................14

SUMMARY OF ARGUMENT ......................................................................15

ARGUMENT .................................................................................................16

   I.   Standard of Review ......................................................................16

   II.   The Supreme Court expressly rejected Long I ...........................17

   III.   Long's No-Fly List Claims are not moot. ...................................20

    A.   Long's facial No-Fly List claims are not moot. ........................20

    B.   Long's As-Applied No-Fly List Claims are not moot. .............21

   IV.   The District Court has jurisdiction over Long's broader watchlist claims. .......................................................................................................22

    A.   Long's broader watchlist claims are not moot because they are intertwined with his No-Fly List claims. ........................................22

    B.   Long continues to suffer redressable harm from being on the watchlist. .................................................................................................24

CONCLUSION ..............................................................................................29

CERTIFICATE OF COMPLIANCE ........................................................30

# TABLE OF AUTHORITIES

## Cases

*American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003) .............................................................................. 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................... 24

*Bramlet v. Wilson*, 495 F.2d 714 (8th Cir. 1974) ...................... 27

*Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111 (4th Cir. 2015) ........... 22

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...................... 27

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................... 27

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ............................................................... 26

*DOJ v. Reps. Comm. For Freedom of Press*, 489 U.S. 749 (1989) ......... 28

*Elhady v. Kable,* 391 F. Supp. 3d 562 (E.D. Va. 2019) .............. 5

*Elhady v. Kable,* 993 F.3d 208 (4th Cir. 2021) ........................ 5

*FBI v. Fikre*, 601 U.S. 234 (2024) ................. 10, 15, 16, 17, 18, 19, 20, 26

*Fikre v. FBI (Fikre 2018)*, 904 F.3d 1033 (9th Cir. 2018) ................ 10, 18

*Fikre v. FBI (Fikre 2022)*, 35 F.4th 762 (9th Cir. 2022) ............. 10, 19, 26

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) .......................................................... 17, 18

*Houck v. Substitute Tr. Servs., Inc.,* 791 F.3d 473 (4th Cir. 2015) ......... 25

*In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135 (4th Cir. 1988) .................................................................. 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................ 17

*Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869 (4th Cir. 2020) .................................................................... 24

*Pittston Co. v. United States*, 199 F.3d 694 (4th Cir. 1999) ................ 21

*S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands*, 713 F.3d 185 (4th Cir. 2013) ............................................ 21

*Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66 (4th Cir. 1988) ......... 21

*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544 (4th Cir. 2006) ............................................................... 16

*United States v. Aramony,* 166 F.3d 655 (4th Cir. 1999) ................ 22

*United States v. Blue & Gibson*, 85 F. App'x 905 (4th Cir. 2004) ......... 22

## Statutes

28 U.S.C. § 534 ............................................................. 28

49 U.S.C. § 46110 ........................................................ 9, 25

# Rules

Fed. R. App. P. 4(a)(1)(B.................................................................15

Fed. R. Civ. P. 54(b)......................................................................22

# INTRODUCTION

Saadiq Long brought this case when on the No Fly List, a subset of the federal terrorism watchlist. He sued, challenging his placement as well as the constitutionality of both the No Fly List and the watchlist. When part of this case was previously on appeal over a question of statutory jurisdiction, the Government removed Long from the No Fly List, but not the broader watchlist. So the Court of Appeals held that Long's "as applied" No Fly List claims were moot, leaving open the question of whether his facial No Fly List claims were also moot. On remand, the District Court found that they were. The District Court also found that the alleged harms he suffered from his broader watchlist placement— including him being tortured by and denied entry into foreign governments, repeatedly stopped by police explicitly due to his watchlist status, and TSA refusing to rule on applications for certain credentials relating to Long's job as a trucker for going on several years—were "stale," resolvable by other remedies, and speculative as to whether they were caused by his watchlist placement in the first instance.

But immediately thereafter, the Supreme Court issued a decision in a different case where, according to the Supreme Court itself, *Long*

created a circuit split with a different case in the Ninth Circuit. It held that that other case—which held a different individual removed from the No Fly List under similar circumstances could continue to assert those claims after removal based on the doctrine of voluntary cessation—was correctly decided, abrogating *Long*.

The obvious and natural result is that Long's No Fly List claims are not moot, requiring reversal of the dismissal of those claims. And because the No Fly List is simply a subset of the broader watchlist, that means Long's challenge to the broader watchlist is not moot either, requiring reversal of the rest of the District Court's dismissal.

But even if the broader watchlist claims were considered separate from the No Fly List claims (despite the fact that Long did not plead them as separate Counts), the Court's determinations that those claims are to be dismissed because they are stale, speculative, or that there is other remedies cannot justify dismissal. For one, for jurisdictional purposes, a claim cannot become "stale" through the passage of time after a complaint is brought. It can only become moot; but given that Long remains on the watchlist, there seems to be no meaningful argument that these claims are moot. For another, the existence of potential other remedies

only prevents Long from bringing this claim if those remedies are exclusive, and there is no claim in this case that they are. And for a third, the nexus between Long's alleged harms and his watchlist placement is hardly speculative. Indeed, in some cases (such as Long's police stops), the nexus was explicit. And in all cases, they are plausible enough for purposes of surviving a motion to dismiss.

The only real complexity to this case, then, is that the Government has filed a cross-appeal. This is likely to make certain Rule 12(b)(6) arguments that the District Court did not pass on below. But since this is a Court of review rather than one of first impression, the better approach to that cross-appeal will almost certainly be to simply remand to the District Court to decide in the first instance.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 702 & 706. An order was entered dismissing all claims on February 23, 2024 . Long timely filed a notice of appeal on April 17, 2024. *See* Fed. R. App. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Are Long's No Fly List claims moot based on the Government's removing Long from the No Fly List and filing a Declaration that he would not be placed back on the list based on "currently available information," when the Supreme Court held earlier this year that such a declaration is insufficient to moot a challenge to the No Fly List because it did not meet the Government's "formidable" burden to show that "the allegedly wrongful behavior could not reasonably be expected to recur?"

2.      Does this Court have Article III jurisdiction over Long's broader watchlist claims when those claims are intertwined with the No Fly List claims, Long remains on the broader watchlist claim, and Long has reasonably alleged that the Government's years-long refusal to issue him certain credentials (known as a TWIC Card and a HAZAMAT Endorsement) are based on Long's watchlist placement?

## STATEMENT OF THE CASE

### A.    The TSC creates a federal terrorism watchlist without Congressional authorization.

In September 2003, then-President George W. Bush issued HSPD-6, an executive order that created a federal terrorism watchlist (previously known officially as the Terrorism Screening Database, or TSDB,

and now rebranded as the Terrorist Screening Dataset, or TSDS).[1] DOJ, in response, created within the FBI a new entity called the Terrorist Screening Center, or TSC. JA022. The TSC now oversees the watchlist. *Id.*

Individuals are placed on the watchlist based on "articulable intelligence or information which, based on the totality of the circumstances and, taken together with rational inferences from those facts, creates a reasonable suspicion that the individual is engaged, has been engaged, or intends to engage, in conduct constituting in preparation for, in aid or in furtherance of, or related to, terrorism and/or terrorist activities." JA022.[2] Being on the watchlist does not require reasonable suspicion of any criminal activity, or indeed any evidence that the person engaged in criminal activity, committed a crime, or will commit a crime in the future. *Elhady v. Kable,* 391 F. Supp. 3d 562, 569 (E.D. Va. 2019), *rev'd on other grounds*, 993 F.3d 208 (4th Cir. 2021). Indeed, over 99% of individuals

---

[1] Available at https://www.govinfo.gov/content/pkg/PPP-2003-book2/pdf/PPP-2003-book2-doc-pg1174.pdf.

[2] In full disclosure, while not in the record, Government officials have represented in a deposition in another case that they have removed the "related to" phrase from the inclusion standard, though they have stated this change did not substantively alter the standard.

on the list have no outstanding arrest warrant at all and are not under any active investigation for terrorism. JA026. Being on the watchlist subjects those on it to a string of consequences, including detentions, interrogations, and searches of electronic devices at the border, JA025, substantial delays and additional screening every time an individual flies, JA039-040, the inability to obtain various security clearances, licenses, or work authorizations, JA037-039, making encounters with state and local law enforcement more dangerous, JA025, certain immigration consequences, JA035, and bank closures, JA035.

When an individual is placed on the watchlist, they are assigned a sublist. JA023. These sublists are the Selectee and Expanded Selectee Lists, as well as the No Fly List. JA023. Being on the No Fly List not only subjects you to the general consequences of being on the watchlist, but also, as the name suggests, prevents those on the list from flying at all. JA023. Specifically, those on the list cannot fly into, out of, or even through US airspace. JA024.

Getting off the watchlist is a Kafkaesque process. People on the watchlist who suffer travel-related difficulties may complain about them via a process called DHS TRIP. JA048. But unless the complainer is

annotated No Fly, the Government does not inform filers of either their initial watchlist status or the outcome of their filing. JA050. If an individual is on the No Fly List, the Government is required by Court order to tell the individual of their status as well as give a brief description of the reasons why. JA050. But that information is often useless, and sometimes plainly incorrect. For instance, Long was informed he was on the No Fly List because he "participated in training that may make you a threat to U.S. national security," and because of his "arrest in Gaziantep, Turkey (not far from the Syrian border) in November 2015." JA055. But (1) that training was as an enlisted member of the US Air Force, JA055-056, JA059 (2) Long was placed on the No Fly List no later than March 2013, before his 2015 arrest (which was done at the behest of the United States Government because of his placement on the watchlist), JA056, JA065.

**B.    Long is on the No Fly List, with horrible consequences.**

Saadiq Long, an American citizen, Air Force veteran, and Muslim, moved to Egypt in 1999 and then Qatar in 2003. JA059. In 2012, when he found out his mother was critically ill, Long decided to return to the U.S. JA060-061. When he applied to renew his passport, the FBI

interrogated him and the State Department denied his application. *Id.* He was then immediately detained by Qatari officials. JA061-062. He ultimately received his passport but was denied the ability to fly home. JA062. After significant media outcry, and only with significant detention and interrogation, the Government allowed him to board an aircraft home. JA062-063.

Once home, he was denied the right to purchase a gun and continued to be denied the right to fly on U.S. domestic and international flights. JA064-066. He nevertheless returned to Qatar by taking a bus to Mexico. JA066.

Even living abroad, the Government's actions continued to wreck Long's life. In 2015, while traveling to Turkey, he and his family were detained and tortured by the Turkish government. JA066-068. He was then banned from Qatar and given a one-shot chance to fly back to the United States. JA068-071. Upon return, he brought the current case in the District Court. After he filed this case in 2017, he finished the DHS TRIP process; the Government confirmed he was on the No Fly List and ultimately refused to take him off the list. JA286-292.

**C. Long is removed from the No Fly List while this case was previously on appeal, and the Fourth Circuit ruled that his as-applied No Fly List claims are moot.**

The District Court transferred the "as-applied" part of this case to 49 U.S.C. § 46110, although it declined to delineate the parameters of what that meant. JA106. According to the District Court, since the DHS TRIP process might provide "*some* relief" because "even if temporarily—TSA may remove an individual from the No Fly List without involving any other agency." JA129 (emphasis original). The District Court found that it lacked jurisdiction over Plaintiffs' procedural and substantive due process claims that were "as applied" but did have jurisdiction over the "facial" claims. JA127. It kicked the "as applied" challenges to this court (again, without defining what that meant) and otherwise stayed the case. JA154.

Long then filed the initial version of this brief in the Court of Appeals, addressing venue and jurisdiction. But in September 2020, just weeks before the federal government's brief in this case was due, out of the blue, the Government announced that they have taken Long off of the No Fly List and claimed that Long's No-Fly-List-based claims were moot as a result. *See Long I*, 38 F.4th 417, 422 (4th Cir. 2022*), abrogated by*

*FBI v. Fikre*, 601 U.S. 234 (2024). The Government provided a declaration from TSC Deputy Director for Operations Jason Herring stating succinctly and without elaboration that "Long has been removed from the No Fly List based on an assessment of the currently available Information," and that "Long will not be placed back on the No Fly List in the future based on the currently available information." JA307.

The Fourth Circuit found that Long's "as applied" No Fly List claims (though not his broader "as applied" watchlist claims) moot. The Fourth Circuit recognized that the Ninth Circuit, dealing with a similar declaration in a No Fly List challenge, found that challenge not moot. *Long*, 38 F.4th at 424 (citing *Fikre v. FBI (Fikre 2018)*, 904 F.3d 1033 (9th Cir. 2018), and *Fikre v. FBI (Fikre 2022)*, 35 F.4th 762 (9th Cir. 2022). But, disagreeing with the Ninth Circuit, this Court found that the Herring Declaration's "nearly identical assurances" to the one Fikre received was sufficient to moot his as-applied claims. *Id.* at 425.

The Fourth Circuit therefore vacated the Court's transfer of the case to the Fourth Circuit and remanded with instructions to dismiss the as-applied challenges to the No-Fly List. *Id.* at 427, 425 n.4 (noting

"[w]hether Long's facial constitutional challenges are also moot" was for the "district court to decide on remand").

### D.   Long continues to suffer consequences from watchlist placement.

Meanwhile, Long remained on the broader terrorism watchlist. In October 2020, shortly after finding out Long was no longer on the No Fly List, Long applied for a TSA Transportation Workers Identification Credential, known as a TWIC Card. JA096. A few months later, in December, he also applied for a HAZMAT endorsement on his driver's license. JA096. These licenses were commercially valuable to Long because Long was a semi-truck driver. JA056-JA057.

Over 11 months later, in September 2021, TSA actually granted him his TWIC Card. JA097. But then a month later, Long received a letter from TSA. That letter stated that "TSA erroneously set a notice of approval" of his TWIC Card. "TSA is still reviewing your TWIC application as well as your Hazardous material Endorsement (HAZMAT) application to determine your eligibility for these credentials based upon all relevant information available to TSA. TSA has not yet made a determination regarding your eligibility for these credentials, and will apprise

you of your determination as soon as the investigation is complete." JA097. Years later, those applications remain stagnant. JA097.

But that is not the only harm that Long has faced due to his watch-list status. Long separately was stopped five times in Oklahoma City from November 2022 to January 2023 as a result of his watchlist status. JA097. At least one of those stops was explicitly because of his watchlist status, according to the officer who pulled him over. JA099. Another one of those stops apparently required 11 officers to draw their guns at him while ordering him out of the car, even though Long had done nothing wrong nor had refused to obey any instructions, JA101-102. Apparently, at least until Long and the Oklahoma City Police Department entered into a stipulation stopping the practice, JA103, Oklahoma Police had a practice of using Automated License Plate Readers on passing cars, and stopping those, like Long, who turned up as hits on the federal terrorism watchlist. Still, there was yet another one of these watchlist-related stops in July 2023. JA313.

### E. The District Court dismisses Long's watchlist claims.

While all of this was happening, Long's case had stalled for some time due to a snafu related to the mandate not being placed on the

District Court docket for some reason. JA155. Once that was resolved, the Government filed a renewed Motion to Dismiss. JA157. According to the Government, the facial claims based Long's No-Fly-List status were moot for the same reason his as applied claims were considered moot. JA195. Long, for his part, noted that *Fikre*—the case that *Long* had explicitly disagreed with—had been taken up by the Supreme Court, and asked the District Court to await the Supreme Court's ruling for deciding mootness. JA256-257. Among other arguments related to the claims that remained based on Long's continued placement on the watchlist, the Government argued that Long has not been harmed by placement because his TWIC Credentials and HAZMAT application had not been rejected, they had just been pending for approximately three (now going on four) years. JA191.

On February 23, 2024, the District Court granted the Government's Motion to Dismiss in full. JA320.

Without reaching the merits, the District Court found Long's facial claims based on No-Fly List status moot as a result of the natural extension of the Fourth Circuit's decision. JA327. Likewise, even though Long continued to allege that this harm was ongoing, and that the only

difference between being on the No Fly List and the broader watchlist was the inability to fly, the District Court found allegations Long had made in his complaint about being detained in or denied entry to certain foreign countries, and denied the ability to purchase a gun, as a result of his watchlist status, were "stale" because they occurred before he was removed from the No Fly List. JA326.

The District Court further found that Long's tying the revocation and multi-year delay to watchlist status was speculative, JA325, notwithstanding that TSA never discloses watchlist status, JA050. And the District Court found that Long had other remedies "to compel a timely decision from the agency" on his TWIC Card and his HAZMAT endorsement. JA325. In deciding that these findings compelled a lack of standing for Long to challenge his continued watchlist placement, the District Court did not cite to a single case.

### F.    The Supreme Court abrogates Long.

About a month after the District Court issued its decision, the Supreme Court decided *Fikre*. The Supreme Court noted that "[s]hortly after the Ninth Circuit issued its decision, the Fourth Circuit held that a similar declaration was sufficient to moot another American citizen's

lawsuit challenging his placement on the No Fly List." *FBI v. Fikre*, 601 U.S. 234, 240 (citing *Long I*, 38 F.4th at 427). The Court "agreed to" accept certiorari "[t]o resolve this conflict in lower court authority." *Id.*

In a 9-0 decision, the Court affirmed *Fikre*, effectively abrogating *Long I*. *Id.* at 241.

In the wake of the Supreme Court's decision in *Fikre*, on April 17, 2024—54 days after the Court's Order dismissing the case—Long filed a timely notice of appeal. *See* Fed. R. App. P. 4(a)(1)(B).

## <u>SUMMARY OF ARGUMENT</u>

Long's No Fly List claims are not moot for the exact reasons explained by the Supreme Court earlier this year in Fikre. The declaration in this case stating Long has been removed from the No Fly List claim and would not be placed back based on "currently available information" does not meet the Government's "formidable" burden to show to it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." This requires reinstation both of the facial as-applied challenge to the No Fly List.

It also requires reinstation of Long's as-applied challenge to the No Fly List, as the Fourth Circuit's decision previously finding that

challenge moot, which was abrogated by the Supreme Court in *Fikre*, does not survive under the mandate rule or law of the case given the Supreme Court's subsequent abrogation of that decision.

Finally, the District Court's dismissal of Long's broader watchlist claims should also be reversed for two independent reasons. First, those claims are intertwined with the No Fly List claims, as the No Fly List is simply an annotation to watchlist placement. Second, Long continues to be injured by his watchlist placement (he has not been removed from the broader watchlist), in the form of effective denials of his TWIC Card and HAZMAT Endorsement credentials, and the fact that Long may have other remedies to challenge those denials does not deprive the Court of Article III jurisdiction.

## ARGUMENT

### I.     Standard of Review

A court reviews a grant of a Motion to Dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) de novo. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). In order to show a case is moot based on defendants' voluntary cessation of the challenged conduct, defendants have the "formidable" burden, *Fikre*, 601 U.S. at 243, to show it is "absolutely clear that the allegedly

16

wrongful behavior could not reasonably be expected to recur." *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).

In order to establish the existence of a case or controversy in order to show Article III jurisdiction, the plaintiff has the burden to show at the motion to dismiss stage, based on the allegations in the complaint, that it has been injured by the defendants' actions and that is "likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).

## II.  The Supreme Court expressly rejected Long I.

The Supreme Court expressly took *Fikre* to resolve a circuit split the Ninth Circuit's decision in *Fikre* created with this court's decision in *Long I*, *FBI v. Fikre*, 601 U.S. at 240, and found *Fikre* correctly decided. *Id.* at 241. As a result, Long I's holding—which this court can still revisit in its entirety, see Section III, below—must be set aside.

As *Long I* explained, the Ninth Circuit's decision was that, based on the declaration filed there, Fikre's removal was not "tethered to any explanation or change in policy, much less an abiding change in policy,"

and so there was neither any assurances that Fikre would "not be banned from flying for the same reasons that prompted the government to add him to the list in the first place" nor any "implementation of procedural safeguards conditioning its ability to revise Fikre's status on the receipt of new information." 38 F.4th at 424 (citing *Fikre 2018*, 904 F.3d at 1038-40). And this Court agreed that "merely removing someone from the No Fly List—with no explanation or assurances—isn't enough to moot a claim." *Id.* But it found that the Herring Declaration's "nearly identical assurances" to the one Fikre received was sufficient to moot his as-applied claims because the Herring Declaration was sufficient to show that the Government believed "he doesn't belong on it," so that any attempt to return him would be, at least in some small part, "on a new factual record." *Id.* at 425.

But in *Fikre*, the Supreme Court affirmed 9-0, abrogating *Long I*. *See* 601 U.S. at 240 (noting it took certiorari to resolve the split between *Fikre* and *Long I*). The Court noted that the federal government, like all other defendants, had a "formidable burden" to show, when it voluntarily ceases the challenged practice, "that the practice cannot reasonably be expected to recur." *Id.* at 241 (quoting *Friends of the Earth*, 528 U.S. at

18

189-90 (cleaned up)) (other citations omitted). And the declaration there (like the declaration here) stating simply that Fikre "based on 'currently available information'" simply did not cut it. *Id.* at 242. That is because, among other reasons, such a statement divorced both of context and the underlying reasons of placement did not "speak[] to whether the government might relist him if he does the same or similar things in the future—say, attend a particular mosque or refuse renewed overtures to serve as an informant." *Id.* Nor did the passage of time after placement—in Fikre's case, about 8 years since he was removed from the No Fly List—suffice to meet the Court's burden, either. *Id.* at 243.

Nothing about *Long I* distinguishes this case from *Fikre*. For one, if it did, the Supreme Court surely would have noted the lack of a circuit split, rather than its determination to "resolve" the split. *Fikre*, 601 U.S. at 240. For another, the critical language that the Supreme Court found wanting, "based on currently available information," appears in both declarations. *Id.* at 242; JA309. While the *Fikre* declaration went further to claim that Fikre "was placed on the No Fly List in accordance with applicable policies and procedures", *see Fikre 2022*, 35 F.4th at 767, and the declaration here did not, the Supreme Court's analysis did not rely on

this distinction. To the contrary, the Supreme Court rejected any repudiation-oriented model of mootness. 601 U.S. at 243-44. Instead, the "formidable" burden of proving the absence of "the potential for a defendant's future conduct" remained on the Government, *id.* at 244, and a declaration saying that Fikre had been removed along with an assertion that Fikre would not be removed based on "currently available information" does not cut it, *id.* at 243.

As a result, *Long* is no longer valid law, and its holding that Long's No-Fly-List-related claims are moot has not only been abrogated, it has been effectively reversed.

## III. Long's No-Fly List Claims are not moot.

### A. Long's facial No-Fly List claims are not moot.

As noted above, the Court of Appeals held in *Long I* that Long's as-applied No Fly List claims were moot, remanding his facial No Fly List claims back to the District Court. 38 F.4th 417, 427. The District Court's decision holding that the facial claims were moot was based on the District Court's plain application of *Long I*. But as Section II, above, explained, *Long I* was wrongly decided. Nor does "law of the case" doctrine allow the application of *Long I*, because by its own terms "law of the case" does not apply when an intervening binding decision calls into question

that previous precedent. *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988); *see also American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). For this reason alone, the District Court's decision should be reversed.

## B. Long's As-Applied No-Fly List Claims are not moot.

Plaintiff's facial claims are not moot for the same reason. Nowhere in *Fikre* did the Supreme Court differentiate between facial and as-applied claims.

Nor does it matter that *Long I* instructed the District Court to dismiss the as-applied claims as moot. *Long*, 38 F.4th at 420. This was an instruction to dismiss the claims as moot, but it did not in and of itself dismiss those claims as moot, and even if it did, dismissal on mootness grounds is both without prejudice and does not create a res judicata issue. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands*, 713 F.3d 175, 185 (4th Cir. 2013); *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999). Instead, it created a mandate that the District Court dismiss certain claims. That dismissal by the District Court then only then became final—and appealable—when incorporated into the

final judgment that Long now appeals. Fed. R. Civ. P. 54(b); *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 120 (4th Cir. 2015)

Meanwhile, the "mandate rule is merely a specific application of the law of the case doctrine." *United States v. Aramony,* 166 F.3d 655, 662 (4th Cir. 1999). So the fact that this Court mandated dismissal of the as-applied No Fly List claims in *Long I* does not itself preclude review of that dismissal when later incorporated into a final, appealable judgment. And, indeed, this Court has previously blessed a district court's refusal to follow a mandate of this Court when that mandate was based on law that was subsequently changed by the Supreme Court. *See, e.g., United States v. Blue & Gibson*, 85 F. App'x 905, 906 (4th Cir. 2004) (unpublished) ("We find that the district court properly declined to follow our mandate in *Gibson* in light of the Supreme Court's intervening decision in *Cotton*.") (citing *Aramony*).

## IV. The District Court has jurisdiction over Long's broader watchlist claims.

### A. Long's broader watchlist claims are not moot because they are intertwined with his No-Fly List claims.

Long's broader watchlist claims are not moot either. (The District Court suggested these claims were "stale," but Long is not aware of any meaningful staleness doctrine). First, they are not moot because his No

Fly List claims are not moot, and the claims are necessarily connected. Indeed, while the Substantive Due Process claim (Count I) relates only to No Fly List Placement, the other causes of action Long brings—Procedural Due Process (Count II), APA related to placement and removal (Count III), APA related to National Crime Information Center transmission of watchlist status to third parties (Count IV), Equal Protection (Count V),[3] and non-delegation/Major Questions Doctrine (Count VIII), all relate either to both watchlist status and No Fly List Placement, or to watchlist status exclusively.

Second, these claims are not moot for the obvious reason that he was never removed from the watchlist. While the District Court stated that his watchlist claims based on his inability to travel to foreign countries and his inability to buy a gun were made "stale" in light of his removal from the No Fly List, these harms had nothing to do with his No Fly List annotation. Nor does the District Court explain how claims for which there was standing for when the lawsuit was brought could become

---

[3] Long has withdrawn Count VI (First Amendment), Count VII (Second Amendment) and Count IX (Notice-based Due Process).

stale over the pendency of the lawsuit in the absence of any change of circumstances relevant to those claims.

## B. Long continues to suffer redressable harm from being on the watchlist.

Third, Long's claims are not moot because he continues to suffer harm from being on the watchlist to this day. And the Court has jurisdiction over those claims based on that redressable harm.

This can be seen in two ways. Most straightforwardly, this can be seen by the effective denial of his HAZMAT and TWIC Card credentials. The District Court brushed these harms away by saying it was "speculative" that these years-long delays, including the walking back of the granting of his TWIC Card, are related to the watchlist. But at this stage in the proceedings, all Long has to show is "some facts supporting a 'reasonable inference' of causation." *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 878 (4th Cir. 2020) (unpublished) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And surely the facts of the Complaint both plausibly allege that (a) Long is on the federal terrorism watchlist, and (b) it is at minimum plausible that being on the federal terrorism watchlist acts to prevent Long from being able to receive TWIC Card credentials or a HAZMAT endorsement for supposedly security reasons,

particularly in light of the years-long refusal of the TSA to issue a final order regarding these credentials. *See Houck v. Substitute Tr. Servs., Inc.,* 791 F.3d 473, 484 (4th Cir. 2015) ("While the court correctly accepted the complaint's factual allegations as true, it incorrectly undertook to determine whether a lawful alternative explanation appeared more likely.").

The District Court seems to separately suggest that Long's only remedy for that harm would be to file a mandamus action forcing the government to formally reject his application for these credentials. But neither the Government nor the District Court explains what statute would render mandamus the exclusive remedy for this delay when the causation—watchlist placement—is independently a violation of his rights and otherwise subject to challenge as an original action in the District Court. The closest the Government comes in its briefing is to argue that if Long was challenging TSA's policies and procedures, that would be subject to the exclusive jurisdiction provision of 49 U.S.C. § 46110. JA187-188. But this is not a challenge to the TSA's TWIC Card or HAZMAT licensing scheme. It is a challenge to TSC's terrorist watchlist scheme. That this scheme leads Long's TWIC Card and HAZMAT

endorsement applications to languish in purgatory is the resulting injury of TSC's actions, not the challenged violation in and of itself. *See Fikre 2022*, 35 F.4th at 774-75 (making similar distinction).

That Long might have taken a different tack as it relates to his TWIC Card and Hazmat Credentials is immaterial, as "[a] court with jurisdiction has a virtually unflagging obligation to hear and resolve questions properly before it." *Fikre*, 601 U.S. at 235 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U. S. 800, 817 (1976) (cleaned up)). And, indeed, it's hardly clear that Long would even be entitled to mandamus relief, as—Catch-22 style—a lawsuit challenging his watchlist status—this very case—could potentially constitute an "other adequate remedy" that is "available," blocking mandamus relief. *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1988).

The other way Long's ongoing harm can be seen is through his repeated wrongful arrests or stops at the hands of the Oklahoma City Police Department. Indeed, this harm goes to the very heart of his APA challenge to NCIC dissemination. And despite ongoing legal efforts that has curtailed (but not stopped) him continuing to be wrongfully arrested

or stopped by the Oklahoma City Police Department, the risk of being pulled over by not only that department but other police departments across the nation remains. After all, Long is a truck driver, requiring him to drive outside of Oklahoma City all the time.

The District Court's reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is misplaced. *Clapper* held that plaintiffs could not challenge Section 702 of the Foreign Intelligence Surveillance Act because Section 702 did not target the plaintiffs' communications, and it was "speculative" that the government would target communications of the people they communicate with in a manner that would also target the plaintiffs' communications. 568 U.S. at 410. Lyons held that plaintiff could not challenge the City of Los Angeles's chokehold arrest process when it was speculative that *Lyons* would be arrested again. But here, the Government is targeting Long, specifically. And the alleged violation—transmit his watchlist status to police—occurs every time Long so much as passes through an automated license plate reader. That is not speculative—especially given Long's job as a truck driver. *See Bramlet v. Wilson*, 495 F.2d 714, 718 (8th Cir. 1974) (while the possibility of future injury "cannot rest on the likelihood that

a party anticipates violating a lawful criminal statute," a plaintiff subject to an illegal policy even in the absence of doing so has standing, which can be shown from past suffering under the policy).

Nor does Long's stipulation with the Oklahoma Police Department change the equation. Putting aside (1) the fact that the stipulation is just with the Oklahoma City Police Department and (2) that Department has already shown an unwillingness or inability to abide by that stipulation, the stipulation does not change the fact that Long's watchlist status continues to be transmitted by the Government to the Department. Long here challenges that transmission of his watchlist status to police on DOJ exceeding its authority under 28 U.S.C. § 534, JA083. And Long has a "privacy right at common law" protected by those limitations. *DOJ v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989). DOJ violates that privacy right whenever it transmits Long's watchlist status to the Department (or any other party), regardless of what the Department then does with that information. So every unlawful transmission of his watchlist status necessarily causes a redressable injury based on every dissemination, regardless if it results in his detention or arrest.

For this reason alone, dismissal of all of the watchlist-related claims are unwarranted.

## CONCLUSION

The Court should vacate the District Court's Judgment dismissing the case and remand with instructions to decide the Government's substantive Rule 12(b)(6) grounds for dismissing the Complaint. In doing so, the Court should deny any request made in the Government's cross appeal to rule on those Rule 12(b)(6) grounds here in the first instance.

Dated: September 11, 2024

Respectfully Submitted,

CAIR LEGAL DEFENSE FUND
/s/ Lena F. Masri
Lena F. Masri (VA 93291)
lmasri@cair.com
Gadeir I. Abbas (VA 81161)
gabbas@cair.com
Justin M. Sadowsky (VA 73382)
jsadowsky@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

*Practice limited to federal matters.*

## CERTIFICATE OF COMPLIANCE

This Document complies with type-volume limits of Fed. R. App.. R. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains 5,868 words.

This complies with the typeface and type style requirements because this brief haseen prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.


/s/ Lena F. Masri
Lena F. Masri